UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

```
JERRI LEIGH JACKSON,          )
                              )
     Plaintiff,               )
                              )
          v.                  )  NO. 3:08-0771
                              )
FALCON TRANSPORT COMPANY,     )  Judge Campbell/Bryant
                              )
     Defendant.               )
```

**TO: The Honorable Todd J. Campbell**

### REPORT AND RECOMMENDATION

Defendant Falcon Transport Company has filed its motion for summary judgment (Docket Entry No. 217), which is supported by excerpts from plaintiff's deposition and affidavits of Milton Van Horn, Mark Guthrie, Diane Rice, James Halloran and Sharon Landers. Plaintiff has responded in opposition (Docket Entry Nos. 223, 224, 225, 226, 227, 228, 229, 230, 231 and 232).

For the reasons stated below, the undersigned Magistrate Judge recommends that defendant's motion for summary judgment be granted, and that the complaint, as amended, be dismissed with prejudice.

### Statement of the Case

Plaintiff, who is proceeding pro se, has filed this action alleging employment discrimination against defendant Falcon Transport Company. In summary, plaintiff alleges that she was employed by Falcon in March 2007 as a truck driver trainee and that on April 16, 2007, her employment was wrongfully terminated due to illegal discrimination based upon her age, sex, religion,

disability, and as retaliation for her filing EEOC charges and employment discrimination lawsuits against previous employers.[1]

## Standard of Review

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing

---

[1] After plaintiff filed her original complaint (Docket Entry No. 1), defendant filed a motion for more definite statement (Docket Entry No. 40). The Court thereafter entered an order establishing a deadline by which plaintiff could file a response to defendant's motion (Docket Entry No. 43). Rather than filing a response to defendant's motion, plaintiff filed what she titled "Order, Notice, Memorandum" (Docket Entry No. 45), but what the undersigned Magistrate Judge has construed as an amended complaint.

2

that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed.R.Civ.P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Summary of Pertinent Facts

After completing a course of driver training during February and March 2007, at Volunteer Training Center in Murfreesboro, Tennessee, plaintiff Jackson was employed as a truck driver trainee by defendant Falcon. Falcon's driver training program in 2007 consisted of three steps. The first step was a one-week orientation program during which the trainees had their skills assessed in driving, backing and shifting a truck, ability to use a map to plan a trip, and ability to follow DOT regulations and understand hours of service. This orientation program was designed to insure that the trainee had the requisite preliminary skills and ability to enter into the second step, over-the-road

3

training with a driver trainer. The over-the-road training program, during which the trainee was paired with an experienced Falcon driver, lasted three weeks. During this step, trainees observed the experienced driver in action and eventually performed the driving and related duties under the observation of the driver trainer. The driver trainer regularly evaluated and recorded the trainee's progress, or lack thereof, in several areas related to the job (for example, pretrip inspections, maintaining accurate logs, turning ability, etc.). If the driver trainee successfully completed the over-the-road training program, the trainee moved to the third and final step of the process, a one-week training program at Falcon's Safety and Skill Center in West Middlesex, Pennsylvania. Trainees who lacked the necessary skills or who made insufficient progress were identified, removed from this training program and discharged at each step of the training process. (Affidavit of Mark Guthrie; Docket Entry No. 218-4).

Plaintiff began her orientation step during the week of March 25 through 29, 2007. Falcon's trainers at the conclusion of this orientation week recommended that plaintiff Jackson be removed from the training program; "They said I didn't know what I was doing." (Docket Entry No. 45 at 21). Plaintiff apparently telephoned her truck driving school at Volunteer Training Center and complained that the Falcon trainers were mistreating her. As a result, she was granted a second week of orientation. (Id.)

4

After plaintiff Jackson apparently showed some improvement in her skills during her second week of orientation, she was advanced to the second step – over-the-road training – and was assigned to driver trainer Diane Rice. In 2006, Ms. Rice had been named Falcon's Driver Trainer Of The Year. Ms. Rice was informed by training manager Jim Halloran that she was being assigned to plaintiff Jackson because plaintiff Jackson "needed extra attention." Halloran further informed Ms. Rice that plaintiff Jackson had to spend additional time in orientation, but that plaintiff Jackson "seemed passionate about her desire to be a truck driver and displayed a willingness to learn." (Docket Entry No. 218-5 at 4).

Diane Rice's lengthy affidavit details her efforts to train plaintiff Jackson as a truck driver. This training commenced on Thursday, April 5, 2007, and concluded on Friday, April 13, 2007. Initially, Ms. Rice allowed plaintiff Jackson to ride with her and to observe as Ms. Rice made her regular deliveries in a commercial motor vehicle. On the following days, Ms. Rice allowed plaintiff Jackson to drive the vehicle in relatively stress-free circumstances at first, but in progressively more realistic situations as the training days progressed. Although not scheduled to work on Saturday, April 7, Ms. Rice nevertheless agreed to meet Ms. Jackson at the terminal to work with Ms. Jackson on her backing skills. "Her backing skills were not very good." (Docket Entry No. 218-5 at 3). In general, Ms. Rice graded Ms. Jackson's skills

5

as satisfactory primarily in the nondriving areas such as fueling, payroll, communications, and DLV paperwork. However, Ms. Jackson was graded as "needed improvement" in several of the most important driving categories. According to Ms. Rice's affidavit, it became apparent to her early in the first week of Ms. Jackson's training that she "was lacking in several skills that are critical to this job." Ms. Rice testified that Ms. Jackson lacked confidence and was quick to panic over the smallest things. When this occurred, she became "completely overwhelmed and forgot what she was supposed to do." This occurred on numerous occasions throughout Ms. Jackson's training with Ms. Rice.

Ms. Rice testified further that Ms. Jackson's "driving skills were lacking in a number of areas." Specifically, her turns were almost always too short, meaning that she cut the turns too closely. Ms. Jackson was "also unable to get the hang of backing the truck." Ms. Jackson stated to Ms. Rice that she had struggled with backing during orientation, and Ms. Rice testified by affidavit that Ms. Jackson "never made the improvement she needed to make." According to Ms. Rice, Ms. Jackson also had trouble keeping the truck in the proper lane, and had a habit of driving to the left of the lane where she was supposed to be. In addition, Ms. Jackson also was uncomfortable driving the truck at or near the posted speed limit. She insisted upon driving fifteen miles an hour under the posted limit. When Ms. Rice attempted to explain why it was unsafe to drive on the highway at such low speeds, Ms.

6

Jackson replied that this was the speed where she was comfortable driving. Ms. Rice further testified that Ms. Jackson "drove the truck like a car," and failed to take into account the extra fifty feet of trailer that was being towed behind her. According to Ms. Rice's testimony, Ms. Jackson "simply drove along as if she was only responsible for the space occupied by a normal passenger car."

Summarizing, Ms. Rice testified that Ms. Jackson "was never able to pull everything together to demonstrate that she could safely perform the job." Ms. Rice stated that when Ms. Jackson would make progress in one area or skill, she would lose ground in another. Ms. Rice testified that Ms. Jackson "had days that were pretty good, but these were not consistent." Ms. Rice concluded that "[o]n an overall basis, over the course of my training with her, she did not make the progress she needed to make to safely work on her own as a professional truck driver." Ms. Rice reported that Ms. Jackson's greatest weakness was that she became easily overwhelmed and panicky, particularly in situations involving heavy traffic. This happened on numerous occasions, and, when it did, Ms. Jackson "would forget what she was supposed to do." Moreover, Ms. Rice stated that as Ms. Jackson became nervous, "she began to lose ground in even those areas that she had performed fairly well."

Ms. Rice testified that by the end of the first full week of training she had concluded that Ms. Jackson "was among the most unsafe drivers I had ever trained at Falcon." Ms. Rice then

informed Jim Halloran, the Falcon Training Manager, that Ms. Jackson "was not going to make it," and "that [Ms. Jackson] was an accident waiting to happen and that, when it did, it was going to be a major accident." Ms. Rice recommended that Ms. Jackson's training be concluded (Docket Entry No. 218-5 at 9).

Ms. Jackson's employment with Falcon was terminated on Monday, April 16, 2007. In her amended complaint, plaintiff alleges that during a telephone conference call Jim Halloran, Training Manager, "stated to me that Falcon was letting me go because trainer Diane Rice had nothing good to say or write about me & wanted me gone." (Docket Entry No. 45 at 27).

### **Analysis**

<u>Discrimination based upon sex and religion</u>. Plaintiff Jackson charges that she was wrongfully terminated because of discrimination based upon her sex and religion. Title VII of the Civil Rights Act of 1964 renders unlawful an employer's decision "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." <u>Jackson v. Quanex Corp.</u>, 191 F.3d 647, 658 (6th Cir. 1999), quoting 42 U.S.C. § 2000e-2(a)(1). In order to establish a *prima facie* case of discrimination, a plaintiff must prove intentional or purposeful discrimination. <u>General Bldg. Contractors Ass'n, Inc. v. Pennsylvania</u>, 458 U.S. 375, 391 (1982). The plaintiff may either

8

present direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory treatment. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572 (6th Cir. 2000). Direct evidence is evidence that establishes the existence of discriminatory intent without any inferences or presumptions. Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1248 (6th Cir. 1995). If the plaintiff attempts to prove discrimination through circumstantial evidence, courts apply the McDonnell Douglas-Burdine test. Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981)). To establish discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for his job and performed it satisfactorily; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. Johnson v. Univ. of Cincinnati, 215 F.3d at 572-73.

If the plaintiff satisfies his burden under the McDonnell Douglas-Burdine test, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for plaintiff's termination. McDonnell Douglas, 411 U.S. at 802. If defendant can satisfy this burden, then the plaintiff must prove that defendant's reason is a pretext to hide unlawful discrimination. Id. at 804. To establish pretext, a plaintiff

must show that "(1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; and (3) that the stated reasons were insufficient to explain the defendant's action." Johnson v. Univ. of Cincinnati, 215 F.3d at 573.

Analyzing this case within the McDonnell Douglas-Burdine format, it appears undisputed that plaintiff Jackson satisfies the first and third elements. That is, as a female she is a member of a protected class and she suffered an adverse employment action, termination. Defendant Falcon, however, argues that she has failed to establish the second element of a *prima facie* case of employment discrimination under McDonnell Douglas – that she was qualified for the job of commercial truck driver and performed it satisfactorily. In fact, Falcon relies upon the affidavit of driver trainer Diane Rice to establish that Ms. Jackson was not qualified to work as an over-the-road truck driver and failed to perform satisfactorily during driver training.

In response, plaintiff Jackson has filed a number of pleadings, although none is sworn in compliance with the requirements of Rule 56(c)(4). For example, plaintiff Jackson argues in Docket Entry No. 224 that, if defendant Falcon believed that she lacked sufficient skills as a truck driver, the company should have sent Ms. Jackson back to the Volunteer Training Center truck driving school for an additional four weeks of training rather than terminating her employment. In addition, Jackson points out that she was "written up as a pleasant trainee, eager to learn

and needing more work on city driving & her turns," and argues that this observation suggests that she did not deserve to be terminated from the Falcon training program (Docket Entry No. 226 at 3). In summary, although plaintiff Jackson charges in her responses that the witnesses who have testified by affidavit in support of Falcon's motion have "lied" and "committed perjury" in their affidavits, plaintiff Jackson has altogether failed to offer any admissible evidence establishing a genuine issue for trial on a critical element of her case – Ms. Jackson during training failed to demonstrate that she was qualified to operate on her own as a safe, competent commercial truck driver. In substance, she argues that Falcon acted unreasonably in not giving her more time to develop her skills and she charges that trainer Diane Rice was biased against her because she had accused Ms. Rice of "physical abuse" by "slapping Jackson's arm, elbow, leg & knee" when Ms. Jackson stalled their truck at a toll booth (Docket Entry No. 231 at 7).

From the evidence before the Court, the undersigned Magistrate Judge finds that there is no genuine issue of material fact for trial in this record regarding the second element of plaintiff's *prima facie* case – that she was qualified for this job and performed it satisfactorily. From this record, the undersigned Magistrate Judge finds that plaintiff Jackson has failed to demonstrate this essential element of her discrimination case, and

that defendant Falcon's motion for summary judgment on claims of sex and religion discrimination should be granted.

Title VII retaliation.  Plaintiff Jackson alleges that the termination of her employment by defendant Falcon constituted retaliation for her filing EEOC charges and employment discrimination lawsuits against previous employers (Docket Entry No. 45 at 15).  To prove a *prima facie* case of Title VII retaliation, a plaintiff must prove that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).

Defendant Falcon argues that plaintiff Jackson cannot demonstrate an essential element of a *prima facie* case of retaliation – that Falcon knew that she had previously filed EEOC charges and employment discrimination lawsuits against prior employers.  In his affidavit (Docket Entry No. 218-6) James Halloran, training manager for Falcon in April 2007, testified that he made the decision to terminate Ms. Jackson's employment based upon the report by trainer Diane Rice that Ms. Jackson lacked the skills and ability to operate a commercial truck safely, and upon Ms. Rice's recommendation that Ms. Jackson be discharged from the training program (Docket Entry No. 218-6 at 3). Mr. Halloran

further testified that at the time he decided to terminate Ms. Jackson's employment he was not aware that she had filed charges of discrimination against her former employers or that she had previously filed for bankruptcy (Docket Entry No. 218-6 at 3-4).

In response, Ms. Jackson has failed to file any sworn testimony challenging Mr. Halloran's testimony that he was unaware of her prior EEOC charges and lawsuits. Instead, plaintiff Jackson argues that defendant Falcon "knew of Jackson's EEOC employment lawsuits; VTC [Volunteer Training Center, Ms. Jackson's Murfreesboro, Tennessee, truck driving school] made sure of it to cover there (sic) butts in company – school placement." (Docket Entry No. 227 at 2). Plaintiff Jackson further asserts: "VTC made sure their butts were covered in the school placement and told all VTC – company alliances about Jackson." (Docket Entry No. 231 at 1). These claims by plaintiff Jackson are not sworn, nor does the record demonstrate that these statements were made of Ms. Jackson on personal knowledge or otherwise would be admissible in evidence. Further, the record does not demonstrate that Ms. Jackson is competent to testify on these matters. Rather, insofar as the record reveals, it appears that these are statements of Ms. Jackson's belief based upon what she speculates may have been communications between her driver training school and personnel employed by Falcon. Ms. Jackson fails to state that the purported communications about her litigation history were made in her presence, or that she otherwise has knowledge of these statements

13

that would make them admissible. Accordingly, the undersigned Magistrate Judge finds that plaintiff Jackson has failed to provide evidence demonstrating that defendant Falcon knew of her EEOC charges and employment litigation filed against previous employers when it terminated her. In the absence of this essential evidence, her claim for Title VII retaliation must be dismissed.

Age discrimination under the ADEA. Ms. Jackson also alleges that her employment with defendant Falcon was illegally terminated based upon age discrimination. The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq.*, makes it unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must come forward with evidence that: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) after she was rejected, a substantially younger applicant was selected. Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 511 (6th Cir. 2004); Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 547 (6th Cir. 2004).

The record indicates that in April 2007, plaintiff Jackson was 47 years old (Docket Entry No. 218-1 at 34). Therefore, she was a member of a protected age class at the time of

her termination by defendant.  In addition, it is undisputed that her employment was terminated by defendant Falcon.  Therefore, on this record the first two elements of a *prima facie* case of age discrimination are established.  However, for the reasons already stated above in this report and recommendation, the undersigned Magistrate Judge finds that Ms. Jackson has failed to establish the third element of a *prima facie* case – that she was qualified for the position of commercial truck driver.

The sworn affidavits of Diane Rice and James Halloran in this record demonstrate that driver trainer Rice found Ms. Jackson to lack the skills and ability necessary to operate a truck safely after several days of training. Moreover, the sworn record establishes that James Halloran, in his role as trainer manager for defendant Falcon, decided to terminate Ms. Jackson from the Falcon driver training program upon the recommendation of Ms. Rice.  In response, plaintiff Jackson has failed to produce any evidence that would create a genuine issue of fact on the issue of her qualification to operate a commercial truck safely.  In the absence of any evidence establishing a genuine issue of fact for trial on this essential element of her claim, the undersigned Magistrate Judge finds that plaintiff's claim of age discrimination must be dismissed.

Disability discrimination under the ADA.  Plaintiff Jackson also has alleged that defendant Falcon wrongfully discriminated against her in her employment based upon her

15

disabilities (Docket Entry No. 45 at 42-47). The Americans With Disabilities Act (ADA), bars employers from discriminating against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of discrimination in violation of the ADA, a plaintiff must show that: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. <u>Macy v. Hopkins County School Bd.</u>, 484 F.3d 357, 365 (6th Cir. 2007) (citing <u>Monette v. Elec. Data Sys. Corp.</u>, 90 F.3d 1173, 1186 (6th Cir. 1996)); <u>Timm v. Wright State University</u>, 375 F.3d 418, 423 (6th Cir. 2004).

At multiple places in this record plaintiff describes herself as "a triply disabled, handicapped female" (Docket Entry No. 45 at para. 87) and she frequently refers to her "learning disabilities" (<u>Id.</u> at para. 129) and her "psychological disability" (<u>Id.</u> at para. 161).

To be disabled under the meaning of the ADA, an individual must (1) have a physical or mental impairment which

"substantially limits" her in at least one "major life activity," (2) have a record of such an impairment, or (3) be regarded as having such an impairment. DiCarlo v. Potter, 358 F.3d 408, 418 (6th Cir. 2004). "Major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." (Id. (quoting 45 C.F.R. § 84.3(j)(2)(ii))).

Although plaintiff Jackson in her many filings in this case frequently describes herself as "disabled" and "handicapped," she has altogether failed to offer any sworn evidence that she is disabled within the meaning of the ADA. She has filed unsworn copies of her medical records and correspondence from her treating physicians, but the gist of these records seems to be that nothing in Ms. Jackson's mental or physical history would disqualify her from working as a truck driver. In fact, it appears that she has obtained these records and letters from her treating physicians in order to convince an employer to hire her as a truck driver. Accordingly, from the evidence that is in this record, the undersigned Magistrate Judge finds that plaintiff Jackson has failed to establish a *prima facie* case that she is disabled within the meaning of the ADA. Moreover, for the reasons already stated in detail earlier in this report and recommendation, the undersigned Magistrate Judge finds that plaintiff Jackson has also failed to establish a *prima facie* showing that she was qualified for the position of a commercial truck driver, with or without

17

reasonable accommodation.  Therefore, for these reasons, the undersigned Magistrate Judge finds that plaintiff Jackson's complaint of disability discrimination should be dismissed.

### **RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge finds that there exists no genuine issue of material fact for trial, that defendant Falcon's motion for summary judgment should be **GRANTED**, and that the complaint, as amended, should be **DISMISSED** with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 5th day of May, 2011.

s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge